UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA W.,[1]

                                        Plaintiff,                Case # 20-CV-1056-FPG

v.                                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

## INTRODUCTION

Plaintiff Brenda W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 14. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In March 2017, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 149. She alleged disability since January 2016 due to back pain, headaches, depression, anxiety, and a lesion on the brain. Tr. 104, 149-50. In April 2019, Administrative Law Judge Brian Battles ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 10.

1

68-78. In June 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 2017,

her application date. Tr. 70. At step two, the ALJ found that Plaintiff had severe impairments of benign meningioma, seizure disorder, headache, anxiety disorder, and depressive disorder. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 71.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with additional limitations. Tr. 72. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 77. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 77-78. The ALJ therefore found that Plaintiff was not disabled. Tr. 78.

## II.   Analysis

Plaintiff argues that remand is warranted because (a) the ALJ erred in partially discounting the medical opinion of her treating psychiatrist, Kulwant Buttar, M.D., and conversely, accepting the medical opinion of consultative examiner Ashley Dolan, Psy.D., and (b) the ALJ erroneously found her knee and back impairments nonsevere at step two.[3]  *See generally* ECF No. 13-1.

### a.   Dr. Buttar's and Dr. Dolan's Opinions

In her application for benefits, Plaintiff alleged that she suffered from both depression and anxiety, and had a lesion in her brain. Tr. 149-50. At the hearing, Plaintiff testified that she had a brain tumor, which impedes her concentration and memory. Tr. 114-16. For example, with respect to memory, she requires the assistance of a "care coordinator" to schedule and keep doctor appointments and to ensure that she takes and maintains her prescription medication. Tr. 118-19.

---

[3] Throughout her brief, Plaintiff cites various legal propositions that are never fully explained or applied to the facts at hand. *See, e.g.*, ECF No. 13-1 at 14-15, 18. It is not this Court's responsibility to develop arguments on a party's behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Because "[j]udges are not expected to be mindreaders," litigants are obligated to "spell out [their] arguments squarely and distinctly." *Id.* Accordingly, the Court limits its analysis only to those arguments that Plaintiff has meaningfully developed.

4

With respect to concentration, Plaintiff testified that she cannot read a book, watch an hour-long TV show, or even chat on the phone without losing focus. Tr. 115-16. Plaintiff stated that three to four times each week, her anxiety causes panic attacks that are akin to heart attacks. Tr. 117, 277. Because of these difficulties, Plaintiff gets nervous around strangers and in public. Tr. 120, 124.

The medical records indicate that, as of late 2016, Plaintiff claimed to have suffered from a "several-year history" of forgetfulness, difficulty with speech, and confusion, which she linked to her seizure disorder and brain tumor. Tr. 403; *see, e.g.*, Tr. 326, 397. At an emergency room visit in November 2016, Plaintiff described her seizures as "intermittent episodes of confusion, word substitution, stuttering, or reportedly staring into space." Tr. 403. At that visit, however, medical providers ruled out seizures or the tumor as the cause, and believed that Plaintiff's condition was instead caused by her simultaneous use of multiple medications, including benzodiazepines, opiates, and a muscle relaxant. Tr. 407. Earlier emergency-room visits and appointments in 2016 also suggest that Plaintiff suffers from such symptoms due to changes in or noncompliance with her medication. *See* Tr. 314-15, 453, 465, 501. From 2016 to 2018, Plaintiff routinely sought treatment for these episodes, and she was generally treated through medication changes. *See, e.g.*, Tr. 321, 397-98, 404, 501, 580.

The records pertaining to Plaintiff's alleged depression and anxiety are mixed. At times, she has denied anxiety or depression, *see* Tr. 481, 487, 495, but has at other times reported suffering from depression and anxiety for "years." Tr. 508. At two different psychiatry consultations, Plaintiff reported anxiety and depression but was unable to describe any symptoms "commensurate with anxiety or depression." Tr. 508; *see also* Tr. 746. In July 2018, Plaintiff

began mental health treatment for reported depression and anxiety, largely on the basis of excessive worrying, past trauma, and grief. Tr. 702.

There are several medical opinions in the record relevant to Plaintiff's mental impairments. In June 2017, Plaintiff attended a psychiatric evaluation with consultative examiner Dr. Dolan. Tr. 550-54. Plaintiff reported dysphoric moods, feelings of worthlessness, crying spells, amotivation, social withdrawal, dizziness, forgetfulness, chest pains during moments of high anxiety, short-term memory deficits, and difficulties following basic conversations. Tr. 550-51. On examination, Dr. Dolan observed slightly slurred speech, disorganized thought processes, mildly impaired concentration and attention, mildly impaired memory skills, and fair insight and judgment. Tr. 552. Dr. Dolan diagnosed Plaintiff with major depressive disorder and unspecified anxiety disorder, and opined that Plaintiff was moderately limited in several areas, including (a) understanding and applying complex directions, (b) using reason and judgment to make work-related decision; (c) interacting adequately with others, (d) sustaining concentration and performing a task at a consistent pace, and (e) regulating emotions, controlling behavior, and maintaining well-being. Tr. 553.

In July 2017, a state agency consultant reviewed the medical records for purposes of Plaintiff's SSI application. He determined that Plaintiff would be capable of performing simple job tasks in a low contact, low stress working environment. Tr. 156.

In February 2019, Dr. Buttar completed a medical source questionnaire on Plaintiff's behalf. He diagnosed Plaintiff with anxiety and mood disorders, Tr. 764, and identified extremely significant functional impairments. Among other things, Plaintiff was seriously limited with respect to following very short and simple instructions, sustaining an ordinary routine, completing a normal workweek and workday, getting along with co-workers, and dealing with normal work

6

stress. Tr. 772. Dr. Buttar indicated that Plaintiff would have good and bad days and would be absent from work more than four days per month. Tr. 775.

In his decision, the ALJ gave "some" weight to Dr. Buttar's opinion. He noted that Dr. Buttar's treatment notes and observations were inconsistent with the significant restrictions he identified. Tr. 75. The ALJ also noted that Plaintiff was not "entirely honest" with Dr. Buttar at appointments, and that, because Plaintiff had just started treatment with Dr. Buttar at the time he wrote the opinion, it was "uncertain whether the limitations described [in his opinion] will persist[] for greater than 12 months." Tr. 76. The ALJ also gave "some" weight to the agency consultant, finding the opinion persuasive for the period the consultant considered (prior to July 2017). *Id.* Finally, the ALJ gave "significant" weight to Dr. Dolan's opinion, finding that the restrictions she identified were consistent with her clinical observations and that Dr. Dolan was familiar with Social Security rules and "the manner in which mental health conditions impair vocationally relevant functioning." *Id.*

On appeal, Plaintiff contends that the ALJ failed to provide good reasons for rejecting Dr. Buttar's opinion and, conversely, the ALJ erred by giving significant weight to Dr. Dolan's opinion. The Court disagrees.

Under the rules applicable at the time Plaintiff filed her claim, an ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth his reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d

28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)-(6).

In this case, the ALJ provided good reasons for giving less than controlling weight to Dr. Buttar's opinion. Some of the restrictions that Dr. Buttar identified found little support in his own treatment notes and clinical observations. *See Kirk v. Colvin*, No. 12-CV-6075, 2014 WL 2214138, at *7 (W.D.N.Y. May 28, 2014) ("Inconsistencies between [the treating source's] treatment notes and final opinions constitute 'good reasons' for assigning her opinions non-controlling weight."); 20 C.F.R. § 416.927(c)(3). At her first appointment, Plaintiff was unfocused and unable to articulate "what she want[ed] from this clinic," Tr. 747, but at the remainder of her appointments with Dr. Buttar, Plaintiff was able to sit and talk appropriately. Tr. 749, 751, 753. At those appointments, Plaintiff's thought processes were logical and goal directed. *Id.* Dr. Buttar observed appropriate grooming and behavior. Tr. 749, 751. The ALJ could reasonably perceive a disconnect between these observations—which reflected Plaintiff's ability to participate meaningfully and appropriately in her treatment—and Dr. Buttar's subsequent claims that Plaintiff was markedly limited in her abilities to concentrate and function socially, and seriously limited in

her abilities to maintain socially appropriate behavior and understand even very short and simple instructions.[4]  Tr. 772-73.

More broadly, the ALJ reasonably rejected Dr. Buttar's more restrictive opinion because of its inconsistency with the record as a whole.  *See* 20 C.F.R. § 416.927(c)(4).  Granted, the ALJ did not explicitly highlight this factor in the section in which he discusses Dr. Buttar's opinion, but it is evident from the decision itself that the ALJ considered the record as a whole in weighing and partially discounting Dr. Buttar's opinion.  *See Jacob M. v. Comm'r of Soc. Sec.*, No. 20-CV-1093, 2022 WL 61007, at *3 n.4 (W.D.N.Y. Jan. 6, 2022).  For example, Dr. Buttar's opinion was premised in part on his belief in Plaintiff's short-term memory problems.  *See* Tr. 773.  The ALJ rejected that premise, finding that the record was "not consistent" on Plaintiff's allegations of poor memory and that objective testing "indicate[d] mild to no memory deficit."  Tr. 74; *cf. Cheryl A. v. Comm'r of Soc. Sec.*, No. 19-CV-1438, 2021 WL 1022442, at *3 (W.D.N.Y. Mar. 17, 2021) (ALJ reasonably rejected medical source's opinion where opinion was premised on unsupported subjective reports of claimant).  As for Plaintiff's anxiety and depression, the ALJ observed that the medical records did not support the claim that Plaintiff had long suffered from debilitating symptoms related to those impairments; it was not until July 2018 that Plaintiff began "specialized mental health" treatment.  Tr. 74-75.  While the ALJ was willing to accept that Plaintiff's symptoms "worsen[ed]" over time, thus necessitating treatment, Tr. 76, those treatment notes (including Dr. Buttar's) suggested a degree of functioning consistent with some level of competitive employment.  *See* Tr. 71-72, 75, 76-77.

---

[4] Although Plaintiff asserts that a claimant's ability to interact with a medical provider can never be "predictive of the ability to interact [with others] in a competitive employment setting," ECF No. 13-1 at 16, the Court cannot accept so bright-line a proposition.  Whether such an inference is reasonable in a particular case must be examined within the context of the record as a whole, not through the application of abstract principles.  *See, e.g.*, *Chapman v. Colvin*, No. 15-CV-6523, 2017 WL 382173, at *5 (W.D.N.Y. Jan. 27, 2017); *Lovell v. Colvin*, 137 F. Supp. 3d 347, 352 (W.D.N.Y. 2015).

Accordingly, contrary to Plaintiff's argument, the ALJ's decision reveals good reasons as to why he discounted Dr. Buttar's opinion. Furthermore, because Plaintiff has not articulated sufficient grounds to conclude that the above reasons were either "incorrect or impermissible," the Court cannot conclude that remand is warranted.[5] *Coley D. v. Comm'r of Soc. Sec.*, No. 20-CV-6541, 2021 WL 2002525, at *3 (W.D.N.Y. May 19, 2021).

Next, Plaintiff contends that the ALJ erred by giving significant weight to Dr. Dolan's opinion because it had become stale with the passage of time and Plaintiff's changing mental-health needs. Plaintiff points out that Dr. Dolan examined Plaintiff in June 2017, more than one year before Plaintiff began mental health treatment. *See* ECF No. 13-1 at 19. The Court is not persuaded.

As a general matter, there "is no requirement that opinion sources have access to the complete record." *Alicia C. v. Comm'r of Soc. Sec.*, No. 17-CV-1235, 2019 WL 1470827, at *9 (N.D.N.Y. Apr. 1, 2019). While in some cases an opinion "that is not based on a complete medical record cannot constitute substantial evidence," *Weston v. Colvin*, No. 16-CV-272, 2017 WL 4230502, at *4 (W.D.N.Y. Sept. 25, 2017), there is no "unqualified rule that a medical opinion is superseded by additional material in the record." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order). The relevance of an opinion will depend on the contents of the opinion and the character of any subsequent medical evidence. *See id.* (consulting psychologist's

---

[5] Plaintiff's other arguments concerning Dr. Buttar's opinions may be rejected without extended discussion. First, Plaintiff challenges other grounds the ALJ identified for discounting Dr. Buttar's opinion, including that (a) Plaintiff had not been "entirely honest" about her alcohol use with Dr. Buttar, and (b) Dr. Buttar did not have a longstanding treatment relationship with Plaintiff. *See* ECF No. 13-1 at 16-17, 19-20. Even if those reasons were erroneous, remand is not warranted because, as stated above, "the ALJ provided other good reasons for rejecting" the opinion. *See Tasha S. v. Comm'r of Soc. Sec.*, No. 20-CV-421, 2021 WL 3367588, at *7 n.5 (W.D.N.Y. Aug. 3, 2021). Second, Plaintiff faults the ALJ for having failed to explicitly discuss why he found Dr. Buttar's off-task and absence limitations unpersuasive. "[A]n ALJ's failure to fully express her reasoning does not justify remand so long as the Court can glean the rationale of the decision," *Cheryl A.*, 2021 WL 1022442, at *2, and as discussed above, the Court can discern from the ALJ's decision that he found those limitations unsupported by Dr. Buttar's treatment notes and inconsistent with the record as a whole, including Dr. Dolan's less restrictive opinion.

10

opinion did not become stale where the new medical evidence did "not raise doubts as to the reliability of [his] opinion"). "[A] medical opinion may be stale if it does not account for the plaintiff's deteriorating condition." *Tammy B. v. Comm'r of Soc. Sec.*, No. 20-CV-44, 2021 WL 2155099, at *4 (W.D.N.Y. May 27, 2021) (internal brackets omitted).

In this case, the Court cannot conclude that the ALJ failed to account for Plaintiff's changed condition after Dr. Dolan's examination. To the contrary, the ALJ expressly noted Dr. Dolan's opinion was "reflective of a single point in time" and would not be granted "great weight with regard to the entire relevant period." Tr. 76. He recognized that Plaintiff suffered from "worsening mental health symptoms" over time and constructed the RFC in light of that fact. Tr. 76-77. Thus, Plaintiff's argument that the ALJ somehow ignored the changes in her mental health impairments or weighed Dr. Dolan's opinion without considering such changes must fail.

In sum, Plaintiff's arguments concerning Dr. Buttar's and Dr. Dolan's opinion do not warrant remand.

### b. Back and Knee Impairments

Plaintiff argues that the ALJ erroneously found her back and knee impairments nonsevere at step two. ECF No. 13-1 at 20-24. This argument does not warrant remand. "An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination." *Sech v. Comm'r of Soc. Sec.*, No. 7:13-CV-1356, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015).

Here, the ALJ expressly noted that she considered "all [of Plaintiff's] impairments, severe and non-severe, . . . in the formation of the [RFC]." Tr. 71. Therefore, any error at step two is

harmless insofar as the ALJ went on to consider Plaintiff's impairments in constructing the RFC. *See* Tr. 76 (discussing how he considered Plaintiff's knee and back issues in fashioning RFC).

To the extent Plaintiff also contends that the ALJ's consideration of her knee and back issues in the context of the RFC was erroneous, she has not raised any argument that would justify remand. Plaintiff cites evidence indicating that (a) she has complained of knee and back pain for years; (b) she was prescribed medication for such pain; (c) imaging showed minor degenerative changes in the lumbar spine, and bone density scans showed osteopenia; and (d) consultative examiner Nikita Dave, M.D., observed limited lumbar range of motion and ability to squat during a consultative examination, and he opined that Plaintiff would be mildly to moderately limited in various areas because of her knee and back issues. *See* ECF No. 13-1 at 22, 23; Tr. 548.

This evidence simply demonstrates Plaintiff's position finds some support in the record. But "[u]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position." *Jacob M.*, 2022 WL 61007, at *4 n.5. Oftentimes the record will contain conflicting evidence that would permit different inferences about a claimant's capacities and limitations; "[i]t [is] up to the ALJ to resolve [those] conflicts," *Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-119, 2019 WL 3083045, at *3 (W.D.N.Y. July 15, 2019), and the Court must "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Thus, "[t]o obtain remand, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Jacob M.*, 2022 WL 61007, at *4 n.5 (internal quotation marks omitted).

In her briefing, while Plaintiff cites evidence that supports her position, she fails to develop any argument as to why it was unreasonable for the ALJ to reach a contrary conclusion in light of

the other evidence showing "transient and mild symptoms and limitations" and "well controlled [symptoms] with treatment."[6] Tr. 70; *see also* Tr. 93, 483, 568, 580 (medications effective in treating pain); Tr. 427, 433, 437, 452, 462, 497, 506, 529, 533, 570, 582, 658 (normal examination findings); Tr. 451, 461 (reporting no back or knee pain). Without more, the Court cannot conclude that remand is warranted. *Accord Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (declining to order remand where plaintiff simply cited treatment notes inconsistent with the ALJ's conclusion but failed to "explain why it was unreasonable for the ALJ to reach a different conclusion").

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 14, 2022
      Rochester, New York

                                              HON. FRANK P. GERACI, JR.
                                              United States District Judge
                                              Western District of New York

---

[6] Plaintiff asserts that the ALJ needed an "overwhelmingly compelling" reason to reject Dr. Dave's opinion. ECF No. 13-1 at 23. But, as stated above, an ALJ need not adopt a medical opinion to the extent it is premised on a factual finding the ALJ reasonably rejects. *See Cheryl A.*, 2021 WL 1022442, at *3. Here, Dr. Dave accepted Plaintiff's claims about her knee and back pain, Tr. 545, 548, while the ALJ declined to do so given the other evidence in the record.